# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **BRUCE ANTHONY WRIGHT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:13-cv-00897** |
| **v.** | ) | **Judge Trauger / Knowles** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 16. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 21.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

## I. INTRODUCTION

Plaintiff protectively filed his application for Disability Insurance Benefits ("DIB") on

1

June 8, 2009, alleging that he had been disabled since an amended onset date of March 1, 2009,[1]

due to degenerative disc disease, spinal arthritis, "left hand tendon problems," "left shoulder

problems," "pain I need shoulder surgery now; and I have had two cervical fusion surgeries and a

surgery to weave the tendons together in my left hand," and "neuropathy hand shoulder." *See,

e.g.,* Docket No. 10, Attachment ("TR"), pp. 156-62, 192, 204.  Plaintiff's application was denied

both initially (TR 54) and upon reconsideration (TR 65).  Plaintiff subsequently requested (TR

81-82) and received (TR 92-100) a hearing.  Plaintiff's hearing was conducted on December 22,

2011, by Administrative Law Judge ("ALJ") Claire R. Strong.  TR 28-45.  Plaintiff and

vocational expert ("VE"), Rebecca Williams, appeared and testified.  *Id.*

On May 17, 2012, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff

was not disabled within the meaning of the Social Security Act and Regulations.  TR 12-23.

Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since March 1, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: degenerative disc disease of the cervical spine, status post 2 cervical fusions; status post left hand tendon surgery; arthritis; neuropathy in hand; left shoulder impingement; and aortic sclerosis (20 CFR 404.1520(c)).

---

[1] Plaintiff notes, "The ALJ stated at hearing and his [*sic*] decision that the Plaintiff initially alleged a disability onset date of January 10, 2008, but the Application Summary for Disability Insurance Benefits shows an initial alleged onset date of February 28, 2009, the day he retired from the military."  Docket No. 16-1, p. 2, *citing* TR 15, 31-32, 156.  In any event, at his hearing, Plaintiff amended his onset date to March 1, 2009, and that is the operative date.  TR 11, 186.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasional lifting/carrying of up to 30 pounds and frequent lifting/carrying of up to 20 pounds; a total of 4 hours of walking/standing during an 8-hour workday for 30 minutes at a time, a total of 7 hours of sitting during an 8-hour workday for 45-60 minutes at a time; no overhead reaching using the nondominant left hand/arm; only occasional other reaching using the left hand/arm; occasional climbing of ladders and scaffolds; occasional stooping, crouching, and crawling; and only occasional exposure to extreme cold.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.   The claimant was born on May 6, 1958 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8.   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.	The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2009, through the date of this decision (20 CFR 404.1520(g)).

TR 17-22.

On July 11, 2012, Plaintiff timely filed a request for review of the hearing decision. TR 7. On July 3, 2013, the Appeals Council issued a letter declining to review the case (TR 1-5), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II.  REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III.  CONCLUSIONS OF LAW

### A.  Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept

as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980)).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not

only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

(1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

(2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

(3)  If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[2] or its equivalent.  If a listing is met or equaled, benefits are owing without further inquiry.

(4)  If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations).  By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5)  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

---

[2] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

## C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) "failed to properly address and resolve significant inconsistencies between his [*sic*] decision and the medical evidence, including the opinion [of] Dr. Morton, which the ALJ gave the 'significant weight' [*sic*] and specifically relied upon"; (2) "violated HALLEX II-1-11-12 and case law in failing to properly consider the fact that Plaintiff has been awarded 50% disability benefits from the Department of Veterans Affairs for

his insomnia and 50% for his sleep apnea"; (3) "failed to resolve apparent inconsistencies

between her decision findings, the *Dictionary of Occupational Titles*, and the testimony of the

vocational expert"; and (4) "erred in failing to find that [Plaintiff] is limited to sedentary work

and is therefore disabled under the Medical-Vocational Guidelines." Docket No. 16-1 (italics

original). Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the

Commissioner's decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and
> transcript of the record, a judgment affirming, modifying, or
> reversing the decision of the Commissioner of Social Security,
> with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can

be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is

overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery

v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and

immediately award benefits if all essential factual issues have been resolved and the record

adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human

Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir.

1994).

## 1.  Evaluation of the Medical Opinion Evidence

Plaintiff argues that the ALJ "failed to properly address and resolve significant

inconsistencies between his [*sic*] decision and the medical evidence, including the opinion of Dr.

Morton, which the ALJ gave the 'significant weight' [*sic*] and specifically relied upon." Docket No. 16-1, p. 11. Plaintiff essentially argues that the ALJ should not have "specifically relied upon" consultative examiner Dr. Morton's opinion, because it was based on only some of the evidence and therefore, "Dr. Morton was not privy to the most significant objective evidence of record during the period under review." *Id.*, p. 12. In particular, Plaintiff asserts that Dr. Morton discussed some of Plaintiff's medical records but "did not review or consider the most recent MRI of [Plaintiff's] cervical spine from September 10, 2009, as she failed to mention it all in this discussion." *Id.* Plaintiff maintains that consideration of the September 2009 MRI "is extremely important, as this MRI revealed interval increase in the C4-5 disk osteophyte complex since the prior MRI, which now contacts the cervical cord and **causes moderate to severe central canal stenosis.**" *Id.* (Emphasis original). Plaintiff notes that, even without consideration of the September 2009 MRI, Dr. Morton assessed Plaintiff with limitations in lifting/carrying, sitting, standing/walking, reaching, pushing/pulling, operation of foot controls, climbing, stooping, crouching, crawling, balancing, kneeling, temperature exposure, operation of a motor vehicle, humidity and wetness exposure, pulmonary irritant exposure, and vibrational exposure. *Id.*, p. 12-13. Plaintiff essentially contends that Dr. Morton could have assessed even greater limitations had she considered Plaintiff's September 2009 MRI "showing worsening of [Plaintiff's] C4-5 disc disease with moderate to severe central canal stenosis." *Id.*, p. 13.

Plaintiff additionally takes issue with the ALJ's according "significant weight" to the opinion of Dr. Morton because, although the ALJ stated that she had "incorporated" Dr. Morton's opinion into her RFC determination, she "failed to include all of [Dr. Morton's] limitations in her RFC finding." *Id.* Plaintiff maintains that "the ALJ's decision is internally

inconsistent" because she should have included *all* of Dr. Morton's limitations into her RFC finding if she was "relying upon and incorporating Dr. Morton's opinion" into that finding. *Id.*, p. 14. Plaintiff argues that the ALJ, instead, "simply ignored the additional limitations and noted only the limitations she included in her RFC finding."[3] *Id.*, p. 13. Plaintiff continues, "Not only did the ALJ fail to include these limitations in her RFC finding after stating that Dr. Morton's opinion was 'incorporated' therein, the ALJ further failed to address or even acknowledge these limitations from Dr. Morton's opinion." *Id., citing* TR 18-21.

Plaintiff also contends that the ALJ: (1) "failed to consider the consistency of [Plaintiff's] subjective allegations as they relate to this significant objective evidence showing worsening of his C4-5 disc disease with moderate to severe central canal stenosis, which would clearly account for his persistent and consistent allegations regarding his pain and related symptoms and limitations" (*id.*); and (2) "failed to adequately address the evidence regarding limitations on [Plaintiff's] use of his left hand for handling, fingering and feeling" (*id.*, p. 14).

Defendant responds: "First, that although Dr. Morton did summarize much of the medical records (Tr. 705-06), her opinion, as a consultative examiner, was based mostly on her examination of Plaintiff." Docket No. 21, p. 8. Defendant further responds: "Second, the ALJ specifically referred to the September 2009 MRI, noting that it demonstrated an interval increase in the C4-C5 disk osteophyte complex, which did contact the cervical cord, but moderately

---

[3] Specifically, Plaintiff contends that the ALJ "ignored Dr. Morton's assessed limitations to only frequent reaching in any direction with the right upper extremity, only frequent pushing or pulling with the bilateral upper extremities, only frequent operation of foot controls with the left lower extremity, only frequent balancing, kneeling, and climbing ramps and stairs, and only frequent exposure to vibrations, loud noise, humidity, wetness, dust, odors, fumes and pulmonary irritants as well as only frequent operation of a motor vehicle." *Id.*, p. 13, *citing* TR 18, 710-12.

narrowed the neural foramen (Tr. 19)." *Id.* Defendant continues: "Indeed, this is how treating physician Dr. Rivet summarized the findings of this MRI (Tr. 292)," and the "ALJ, in effect, implicitly found that this MRI was not inconsistent with the ALJ's RFC finding." *Id.* Defendant argues that the ALJ's finding was supported by substantial evidence. *Id.*

With regard to Plaintiff's argument that the ALJ did not include all of Dr. Morton's opined limitations in her RFC finding, Defendant responds that "all the omitted limitations allowed for the activity to be done frequently (up to 2/3 of the time), but not continuously (more than 2/3 of the time)," and that it "stretches the imagination that all three jobs specified by the VE (Tr. 22, 275) require: continuous reaching in any direction with the right upper extremity; continuous pushing or pulling with the bilateral upper extremities; continuous operation of foot controls with the left lower extremity; continuous balancing, kneeling, and climbing ramps and stairs; continuous exposure to vibrations, loud noise, humidity, wetness, dust, odors, fumes, and pulmonary irritants; and continuous operation of a motor vehicle." *Id.*, p. 8-9. Defendant notes that Plaintiff has failed to adduce any evidence in support of "his counter-intuitive argument." *Id.*, p. 9.

As to Plaintiff's argument that the ALJ did not adequately address limitations in Plaintiff's left hand for handling, fingering, and feeling, Defendant asserts that "this omission would appear to be harmless, as Dr. Morton opined that Plaintiff could continuously handle, finger, and feel with both hands (Tr. 710)." *Id.* Accordingly, Defendant argues that Plaintiff's argument is unavailing. *Id.*

The ALJ discussed the medical evidence, including the opinion of Dr. Morton, as follows:

After the hearing, the claimant underwent a consultative physical examination, which was conducted by Dr. Deborah Morton. Ex. 6F. . . .

. . .

. . . the undersigned has given particular consideration to the claimant's physical impairments (see Sections 1.00, et seq., Musculoskeletal System; 2.00, et seq., Special Senses and Speech; 3.00, et seq., Respiratory System; 4.00, et seq., Cardiovascular System; 5.00, et seq., Digestive System; 6.00, et seq.; Genitourinary Impairments; 7.00, et seq., Hematological Disorders; 8.00, et seq., Skin Disorders; 9.00, et seq., Endocrine System; 10.00, et seq., Impairments that Affect Multiple Body Systems; 11.00, et seq., Neurological System; 13.00, et seq., Malignant Neoplastic Diseases; and 14.00, et seq., Immune System Disorders). Despite the claimant's combined impairments, the medical evidence does not document listing-level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination.

. . .

The undersigned notes that much of the medical evidence of record is dated before the amended alleged onset date, a time in which the claimant testified that he was still employed by the Army. Ex. 1F, 2F, 3F, 4F, 5F.

In terms of the claimant's alleged neck problems, the claimant underwent a C5-C6 anterior cervical diskectomy and fusion in 2001 and a C6-C7 anterior cervical diskectomy and fusion in January 2008. Ex. 1F. Prior to his January 2008 surgery, treatment notes showed assessments of cervical radiculopathy. Ex. 3F. September 2009 treatment notes from Langley Air Force Base Hospital document complaints of pain in the neck and upper back with numbness in his left thumb and left shoulder pain. Ex. 1F. Notably, treating physician Dr. Dennis Rivet noted that the claimant's symptoms do "not return to level of symptomatology that he has had in the past" (a time in which the claimant was working). The claimant was noted to have no difficulty with gait, loss of dexterity in his hands, balance, stability, or numbness in the lower extremities. At that visit, the claimant also reported low back pain when "stooping over his work bench in his garage." Ex. 1F. A September 2009 MRI of the cervical spine demonstrated an

12

interval increase in the C4-C5 disk osteophyte complex, which did contact the cervical cord but moderately narrowed the neural foramen. Ex. 1F.

Additionally, July 2007 treatment notes from Portsmouth Naval Medical Center document emergency department treatment after the claimant lacerated his left forearm on a saw. Ex. 3F. The claimant reported decreased use of his fingers and was unable to extend or flex his hand. Ex. 3F. The claimant subsequently underwent surgery to prepare [*sic*] his tendons and muscles in the left hand. Ex. 3F. May 2009 treatment notes from Craven Army Medical Health Clinic also document a diagnosis of left shoulder impingement with pain localized in the left shoulder. Ex. 4F. May 2009 treatment notes document complaints of left shoulder pain which constantly aches and which worsens with movement. Ex. 4F. June 2009 x-ray imaging of the left shoulder revealed some minimal AC joint arthritis and a down sloping type II or III acromion with an anterior spur. Ex. 4F. March 2010 treatment notes document continued complaints of pain in the left arm and shoulder. Ex. 5F.

Additionally, March 2010 treatment notes from document [*sic*] a diagnosis of aortic sclerosis in the abdominal aorta. However, the claimant reported that he had no abdominal pain and was noted to be asymptomatic. Ex. 5F.

In January 2012, after the hearing in this claim, the claimant underwent a consultative physical examination, which was conducted by examining physician Dr. Deborah Morton. Ex. 6F. The claimant complained of chronic pain in his back and neck, left arm and shoulder pain, and bilateral arm neuropathy. Upon examination, the claimant's back was noted to be nontender with no musculoskeletal clubbing, cyanosis, edema, or deformities noted. Ex. 6F. The claimant was able to get out of the chair unassisted and did not use an assistive device. His station was normal, and his gait showed a very mild right-sided limp which improved the longer he walked. The claimant was able to stand on his toes and rock back on his heels, and straight leg raise testing and Romberg testing were both negative. The claimant had normal strength in both the upper and lower extremities, and sensation was noted to be grossly intact. The claimant did display a slightly reduced range of motion in the cervical and dorsolumbar spine but exhibited a full range of motion in both shoulders. Dr. Morton's

diagnoses for the claimant included degenerative disc disease; arthritis; left arm tendon injury; left shoulder, possible degenerative joint disease; and neuropathy in his upper extremities. Ex. 6F.

. . .

As for the opinion evidence, consultative examining physician Dr. Deborah Morton opined that the claimant has the following ability to do work-related activities: occasional lifting/carrying of up to 30 pounds and frequent lifting/carrying of up to 20 pounds; a total fo 4 hours of walking/standing during an 8-hour workday for 30 minutes at a time; a total of 7 hours of sitting during an 8-hour workday for 45-60 minutes at a time; no overhead reaching using the left hand/arm; only occasional other reaching using the left hand/arm; occasional climbing of ladders and scaffolds; occasional stooping, crouching, and crawling; and only occasional exposure to extreme cold. Ex. 6F. Dr. Morton's opinion is consistent with the treatment notes, specifically Exhibits 1F, 2F, and 3F, and with her own examination findings. Consequently, her opinion is given significant weight and has been incorporated into the above-stated residual functional capacity.

TR 15, 18, 19-21.

After reviewing the evidence of record, the ALJ ultimately determined that Plaintiff

retained the following RFC:

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasional lifting/carrying of up to 30 pounds and frequent lifting/carrying of up to 20 pounds; a total of 4 hours of walking/standing during an 8-hour workday for 30 minutes at a time, a total of 7 hours of sitting during an 8-hour workday for 45-60 minutes at a time; no overhead reaching using the nondominant left hand/arm; only occasional other reaching using the left hand/arm; occasional climbing of ladders and scaffolds; occasional stooping, crouching, and crawling; and only occasional exposure to extreme cold.

TR 18.

With regard to the evaluation of medical evidence, the Code of Federal Regulations

states:

> Regardless of its source, we will evaluate every medical opinion
> we receive.  Unless we give a treating source's opinion controlling
> weight under paragraph (d)(2) of this section, we consider all of the
> following factors in deciding the weight we give to any medical
> opinion.
>
> (1)  Examining relationship.  Generally, we give more
> weight to the opinion of a source who has examined you than to
> the opinion of a source who has not examined you.
>
> (2) Treatment relationship.  Generally, we give more
> weight to opinions from your treating sources, since these sources
> are likely to be the medical professionals most able to provide a
> detailed, longitudinal picture of your medical impairment(s) and
> may bring a unique perspective to the medical evidence that cannot
> be obtained from the objective medical findings alone or from
> reports of individual examinations, such as consultative
> examinations or brief hospitalizations.  If we find that a treating
> source's opinion on the issue(s) of the nature and severity of your
> impairment(s) is well-supported by medically acceptable clinical
> and laboratory diagnostic techniques *and is not inconsistent with
> the other substantial evidence in your case record*, we will give it
> controlling weight.  When we do not give the treating source's
> opinion controlling weight, we apply the factors listed in
> paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the
> factors in paragraphs (d)(3) through (d)(6) of this section in
> determining the weight to give the opinion. . . .
>
> (3) Supportability.  The more a medical source presents
> relevant evidence to support an opinion, particularly medical signs
> and laboratory findings, the more weight we will give that opinion.
> The better an explanation a source provides for an opinion, the
> more weight we will give that opinion. . . .
>
> (4) Consistency.  Generally, the more consistent an opinion
> is with the record as a whole, the more weight we will give to that
> opinion.
>
> (5) Specialization. We generally give more weight to the
> opinion of a specialist about medical issues related to his or her
> area of specialty than to the opinion of a source who is not a
> specialist.
>
> . . .

20 C.F.R. § 416.927(d) (emphasis added).  *See also* 20 C.F.R. § 404.1527(d).

The ALJ must articulate the reasons underlying her decision to give a medical opinion a specific amount of weight.[4]  *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the medical opinion and the reasons for that weight.  SSR 96-2p.

Regarding Plaintiff's contention that the ALJ erroneously "specifically relied upon" Dr. Morton's opinion because that opinion "did not review the September 2009 MRI which revealed interval increase in the C4-C5 disk osteophyte complex since the prior MRI, which not contacts the cervical cord and causes moderate to severe central canal stenosis" (Docket No. 16-1, p. 12, emphasis omitted), as is demonstrated above, when reviewing the evidence of record, the ALJ explicitly discussed Plaintiff's September 2009 MRI and its findings, thereby evidencing that she was aware of, and considered, its results (TR 19).

Moreover, contrary to Plaintiff's assertion that the ALJ "specifically relied upon" Dr. Morton's opinion, as can be seen, the ALJ in the instant action considered all the medical evidence of record and reached a reasoned decision.  While the ALJ did give Dr. Morton's

_____

[4] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record.  *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. April 28, 2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

opinion "significant weight" because it was consistent with the treatment notes and with her own examination findings, there is nothing in the record to suggest that in so doing, the ALJ "specifically relied upon" Dr. Morton's opinion, rather than properly upon her evaluation of the entirety of the evidence.

Furthermore, although Plaintiff argues that the ALJ "simply ignored [Dr. Morton's] additional limitations and noted only the limitations she included in her RFC finding," and therefore erred by not including all of Dr. Morton's opined limitations into her RFC determination (Docket No. 16-1, p. 13-14), Plaintiff cites no authority for the proposition that an ALJ must accept and incorporate an opinion in its entirety. In fact, an ALJ's RFC finding does not need to correspond to a particular physician's opinion. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (*citing* SSR 96-5p). Rather, as set forth above, the Regulations require the ALJ to consider the entirety of the evidence of record, weigh that evidence, make credibility determinations, reach a reasoned decision, and articulate the basis for that decision. In so doing, the ALJ must only accept and incorporate those limitations she finds to be credible, and consistent with, and supported by, the evidence. The ALJ in the instant action did just that.

With regard to his credibility, Plaintiff argues that the ALJ failed to consider the consistency of his subjective allegations with the objective evidence, "which would clearly account for his persistent and consistent allegations regarding his pain and related symptoms and limitations." Docket No. 16-1, p. 13-14. The Sixth Circuit has set forth the following criteria for assessing a plaintiff's subjective allegations of pain:

> [S]ubjective allegations of disabling symptoms, including pain, cannot alone support a finding of disability...[T]here must be evidence of an underlying medical condition *and* (1) there must be

> objective medical evidence to confirm the severity of the alleged
> pain arising from the condition *or* (2) the objectively determined
> medical condition must be of a severity which can reasonably be
> expected to give rise to the alleged pain.

*Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (*quoting* S. Rep.

No. 466, 98th Cong., 2d Sess. 24) (emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929

("[S]tatements about your pain or other symptoms will not alone establish that you are

disabled...."); *Moon v. Sullivan*, 923 F.2d 1175, 1182-83 (6th Cir. 1990) ("[T]hough Moon

alleges fully disabling and debilitating symptomology, the ALJ, may distrust a claimant's

allegations...if the subjective allegations, the ALJ's personal observations, and the objective

medical evidence contradict each other.").  Moreover, "allegations of pain...do not constitute a

disability unless the pain is of such a debilitating degree that it prevents an individual from

engaging in substantial gainful activity."  *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d

1224, 1227 (6th Cir. 1988).

  When analyzing the claimant's subjective complaints of pain, the ALJ must also consider

the following factors and how they relate to the medical and other evidence in the record: the

claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the

precipitating and aggravating factors; the type, dosage and effect of medication; and the other

treatment or measures to relieve pain.  *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994)

(*construing* 20 C.F.R. § 404.1529(c)(2)).  After evaluating these factors in conjunction with the

evidence in the record, and by making personal observations of the claimant at the hearing, an

ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms

are not credible.  *See, e.g., Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997);

*Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981).

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; *Kirk,* 667 F.2d at 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Sec'y of Health & Human Servs.,* 818 F.2d 461, 463 (6th Cir. 1987)). Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence. *See Walters*, 127 F.3d at 531 (*citing Bradley,* 862 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 921 (6th Cir. 1987)). If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record. S*ee King*, 742 F.2d at 975.

When discussing Plaintiff's testimony, the ALJ explicitly found that "the claimant's testimony is only partially credible." TR 20. The ALJ explained,

> While the claimant's impairments could reasonably result in some limitations of functioning due to pain, the claimant's statement that he is unable to work due to his neck and arm pain appears exaggerated in light of the medical evidence, especially Dr. Morton's consultative examination findings. Ex. 6F. Consequently, the claimant's testimony is credited only to the extent that it is consistent with the above-stated residual functional

19

capacity.

*Id.*

After assessing all of the evidence and the relevant factors, the ALJ in the case at bar ultimately determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." TR 19. This determination is within the ALJ's province. The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision. The ALJ's decision properly sets forth the evidence on which she based her decision and articulates the reasons therefore.

Plaintiff finally, in one sentence, contends that the ALJ failed to adequately address the evidence regarding limitations on his use of his left hand for handling, fingering, and feeling. Docket No. 16-1, p. 14. Plaintiff does not, however, set forth the specific evidence regarding the limitations on the use of his left hand for fingering, feeling, and feeling he contends the ALJ "failed to adequately address" or explain how he feels such omission constitutes grounds for remand or reversal.

As can be seen above, the ALJ recounted Plaintiff's medical records, which included tests for, and examinations of, Plaintiff's fingers, hands, arms, and shoulders. TR 19-21. Specifically, the ALJ noted, *inter alia*, treating physician Dr. Dennis Rivet's finding that Plaintiff had no loss of dexterity in his hands. TR 19, *citing* Ex. 1F. Additionally, Dr. Morton opined that Plaintiff had normal strength in both his upper and lower extremities, had "grossly intact" sensation, and could "Continuously (over 2/3)" perform handling, fingering, and feeling with *both* hands. *See*

TR 703-13; *see also*, TR 20-21.  Thus, Dr. Morton did not limit Plaintiff's ability to handle, finger, and feel with either hand.  *See* TR 710.  Dr. Morton did, however, limit Plaintiff's reaching, a limitation the ALJ explicitly and properly incorporated into her RFC determination. TR 18.

In light of the foregoing, Plaintiff cannot sustain his first statement of error; Plaintiff's arguments contained therein fail.

## 2.  HALLEX II-1-11-12

Plaintiff next argues that the ALJ "failed to properly consider the disability determination form the VA."  *Id.,* p. 16.  Specifically, Plaintiff contends that the ALJ "violated HALLEX II-1-11-12 and case law in failing to properly consider the fact that Plaintiff has been awarded 50% disability benefits from the Department of Veterans Affairs for his insomnia and 50% for his sleep apnea."  *Id.*, p. 15.  Plaintiff takes issue with the fact that the ALJ noted that he was granted "50 percent disability due to insomnia (noted as psychiatric disorder) and 30 percent disability due to sleep apnea," when, in fact, his sleep apnea disability had been increased to 50% as of June 22, 2011.  *Id.*, *citing* TR 21, 181.  Plaintiff argues that, in so doing, the ALJ "significantly misrepresented the Plaintiff's VA disability decision."  *Id.*, p. 16.

Plaintiff also takes issue with the ALJ's discussion of the VA's decision, stating:

> Moreover, the ALJ further stated that "this disability rating offers no opinion by any treating physician or provider regarding the claimant's physical ability to perform work activities."  Tr. 21. However, the VA rating decision states that [Plaintiff's] "physician determined [his] psychiatric symptoms result in reduced reliability and productivity."  Tr. 183.  Likewise, this decision states that his physician determined that his sleep apnea was diagnosed on sleep study from June 22, 2011, and was a continuation of the complaints documented previously and was a progression of this

> diagnosis. Tr. 184. The decision then states that this "condition
> resulted in daytime hypersomnolence," and the "increased
> evaluation of 50 percent is assigned from June 22, 2011, the date
> the C-PAP was determined to be recommended for treatment." Id.
> While these are not related directly, *per se*, to his "physical
> ability," they are nonetheless evidence and opinions from his
> physicians that show work-related limitations from his
> impairments of insomnia and sleep apnea. Tr. 181-184.

*Id.*, p. 15-16.

Plaintiff maintains that the ALJ "failed to sufficiently explain how this VA rating was considered or accounted for in her decision or resolve the inconsistency between this finding by the VA and her own decision." *Id.*, p. 16.

Plaintiff additionally argues that the ALJ failed to address the mental limitations resulting from his sleep apnea. *Id.*

Defendant responds that the ALJ did, in fact, address the Department of Veteran's Affairs disability award. Docket No. 21, p. 9. Specifically, Defendant argues that the ALJ explicitly acknowledged the October 2011 disability rating from the Department of Veteran's Affairs, but noted that this disability rating offered no opinion by any treating physician or provider regarding Plaintiff's physical ability to perform work activities, and further noted that the treatment notes included very little reference to problems from insomnia or sleep apnea. *Id.* At p. 9-10, *citing* TR 21.

Defendant also responds that the Department of Veteran's Affairs awarded Plaintiff only partial disability. *Id.*, p. 10, *citing* TR 21, 181. Defendant argues that this distinction is significant because an individual must be totally disabled to be found disabled under the Act. *Id.* Defendant contends, therefore, that there is no contradiction between the Department of

Veteran's Affairs disability award and the ALJ's denial of Plaintiff's claim (which would have required a finding of total disability).  *Id.*  Defendant also contends that, "For the same reason, it is not reversible error that the ALJ referred to the [Department of Veteran's Affairs'] 30% disability award due to sleep apnea, although the [Department of Veteran's Affairs'] later increased this to 50%."  *Id.*

The ALJ addressed the Department of Veteran's Affairs ("DVA") disability rating as follows:

> The claimant's representative also included an October 201 [*sic*] disability rating from the Department of Veterans' Affairs, assigning the claimant 50 percent disability due to insomnia (noted as psychiatric disorder) and 30 percent disability due to sleep apnea.  Ex. 6D.  However, this disability rating offers no opinion by any treating physician or provider regarding the claimant's physical ability to perform work activities.  Further, the treatment notes include very little reference to problems form insomnia or sleep apnea.  Ex. 1F-5F.  As such, this statement is given little weight.

TR 21.

As an initial matter, although the ALJ did explicitly discuss the DVA's disability ratings of Plaintiff, Plaintiff is correct in his assertion that the ALJ failed to acknowledge that his 30% disability rating due to sleep apnea had been increased to 50%.  *Compare* TR 21 with Docket No. 16-1, p. 15-16.  This omission is harmless, however, because regardless of whether the DVA found Plaintiff to be 30% disabled due to sleep apnea or 50% disabled due to sleep apnea, both determinations find Plaintiff to be only partially disabled, and there is no such thing as "partial disability" under the SSA's definition of disability.  *See* 42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1505.

Moreover, a disability determination from another governmental agency, such as the DVA, while possibly insightful, is not binding on the SSA because it uses different rules and standards than does the SSA and because disability is an issue reserved to the Commissioner. *See* SSR 06–03p; 20 C.F.R. §§ 404.1527(e) and 404.1504. Thus, while the DVA may find Plaintiff to be partially disabled under its definition of disability, he may not be found disabled under the SSA's definition of disability. The ALJ is bound to apply the applicable law for determining disability under the SSA, and the fact that Plaintiff has received partial disability benefits from the DVA, while relevant evidence to be considered by the ALJ in her evaluation of the evidence in its entirety, does not bind her to find Plaintiff disabled under the Act and Regulations. *See* 20 C.F.R. 404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its own rules and is not our decision about whether you are disabled . . . We must make a disability . . . determination based on social security law. Therefore, a determination made by another agency that you are disabled . . . is not binding on us.") Accordingly, contrary to Plaintiff's assertion (Docket No. 16-1, p. 16), there is no "inconsistency" to be resolved between the DVA's determination and that of the ALJ.

With regard to Plaintiff's contention that the ALJ failed to address the mental limitations resulting from his sleep apnea (*Id.*), Plaintiff did not even allege disability due to mental limitations resulting from his sleep apnea. *See* TR 204. Failure to consider an impairment is harmless, however, absent allegation of such impairment and record evidence of resultant limitation or restriction. *See* SSR 96-8p (1996).

For the reasons discussed herein, Plaintiff likewise cannot sustain his second statement of

error.

### 3.  "Apparent Inconsistencies" Between ALJ's Decision, DOT, and VE's Testimony

Plaintiff also contends that the jobs identified as appropriate by the VE actually exceed the restrictions set forth in the ALJ's RFC finding because they all "require at least frequent reaching" and "frequent handling and fingering," such that the ALJ should have addressed or resolved these inconsistencies.  *Id.*, p. 17-18.  Plaintiff argues that the ALJ's failure to do so renders her decision unsupported by substantial evidence.  *Id.*

Plaintiff also argues that, because "the evidence provides substantial support for additional limitations on [his] ability to use his upper extremities for handling, fingering and feeling, particularly with regard to his left upper extremity," "additional limitations were warranted in this case which were inconsistent with these representative occupations provided at step five."  *Id.*, p. 18-19.

Defendant responds first, that "the VE specifically testified that there was no discrepancy between the jobs she testified that Plaintiff could perform and the DOT, other than the need for a sit/stand option, which is not directly addressed by the DOT (Tr. 275-76)."  Docket No. 21, p. 10.  Defendant also responds that, "'claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error' to the Court, when the alleged conflict was not deemed sufficiently significant to be raised by the plaintiff at the administrative hearing."[5]  *Id.*, p. 10-11, *quoting Brown v. Barnhart*, 408 F. Supp. 2d 28, 35 (D.

---

[5] Defendant notes that in the case at bar, where the VE testified post-hearing via interrogatory, Plaintiff's representative was given the opportunity to, among other things, request a supplemental hearing if he believed that the VE testimony was incorrect.  *Id.*, p. 11, *citing TR*

D.C. 2006).

Regarding Plaintiff's contention that the evidence supports additional limitations on Plaintiff's ability to use his upper extremities for handling, fingering, and feeling, whereas the jobs listed by the VE require frequent handling and fingering, Defendant responds that Dr. Morton opined that Plaintiff could continuously handle, finger, and feel with both hands. *Id.*, *citing* TR 710.

The ALJ discussed the VE's opinion and the DOT as follows:

> . . . the claimant's ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified via interrogatory (Ex. 15E) that given all of these factors the individual would be able to perform the requirements of representative occupations such as:

> 1. Marker, DOT 209.587-034 (light, unskilled, svp 2; 45,000 jobs in U.S.);

> 2. Cashier II, DOT 211.462-010 (light, unskilled, svp 2; 164,000 jobs in U.S.); and

> 3. Assembly Press Operator, DOT 690.685-014 (30,000 jobs in U.S.).

> Pursuant to SSR00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. The vocational expert adequately explained her responses regarding the sit/stand option in her interrogatory responses. Ex. 15E.

TR 22.

---

277-78.

Plaintiff's arguments in this statement of error are based on his assertion that, because "the evidence provides substantial support for additional limitations on [his] ability to use his upper extremities for handling, fingering and feeling, particularly with regard to his left upper extremity," "additional limitations were warranted in this case which were inconsistent with these representative occupations..." Docket No. 16-1, p. 18-19. As analyzed *supra* at pages 20-21, however, Plaintiff's arguments on this point fail.

Moreover, regarding "conflicts" between the jobs the VE identified as appropriate and the occupational information contained in the DOT, the VE confirmed their consistency and explained:

> While not actually a conflict, the DOT does not address jobs with a sit/stand option. The RFC of Dr. Morton states limitations of 30 min at one time for standing or walking and sitting 45-60 min at a time. The job number[s] given are based upon my own research of these jobs, job analysis, and job placement. Numbers for Cashier II were derived form using the Job Browser Pro Weighted. DOT numbers and isolating numbers by industry.

TR 276.

Because additional limitations on Plaintiff's ability to handle, finger, and feel are not warranted, and because there is no conflict with the jobs identified as available and appropriate by the VE and their DOT definitions, the jobs identified as available and appropriate satisfy the Commissioner's burden at step five of the sequential evaluation process.

Additionally, an ALJ may rely on the testimony of a VE in response to a hypothetical question as substantial evidence of the existence of a significant number of jobs that the claimant is capable of performing as long as the hypothetical question accurately represents the claimant's credible limitations. *See Varley*, 820 F.2d at 779 (*quoting O'Banner v. Sec'y of Health, Ed. &*

*Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). In the instant action, the hypothetical question

posed to the VE in the interrogatories submitted by the ALJ accurately reflected the limitations

that the ALJ found credible, and consistent with, and supported by, the evidence of record. *See*

TR 273-76. Because the ALJ's hypothetical question accurately represented Plaintiff's credible

limitations, the ALJ properly relied on the VE's answer to the hypothetical question to prove the

existence of a significant number of jobs in the national economy that Plaintiff could perform.

*See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Hardaway v. Sec'y of Health &*

*Human Servs.*, 823 F.2d 922, 927-28 (6th Cir. 1987); *Varley*, 820 F.2d at 779. Accordingly,

Plaintiff's claim fails.

**4. RFC and Medical-Vocational Guidelines**

Plaintiff argues that the ALJ's determination that he retained the RFC for a range of light

work except for some additional limitations is "contrary to the medical evidence and fails to

account for all of the limitations resulting from his severe impairments," and "represents error on

behalf of the ALJ, as the record supports additional limitations." *Id.*, p. 19. Plaintiff contends

that the ALJ instead should have limited him to sedentary work and accordingly found him

disabled under the Medical-Vocational Guidelines. *Id.*

Specifically, Plaintiff contends:

> Here, the evidence contains extensive documentation of
> [Plaintiff's] severe impairments, including chronic neck pain and
> radiculopathy status post two cervical fusion surgeries with new
> evidence of worsening degeneration at C4-5 causing moderate to
> severe central canal stenosis. See Tr. 291-292, 321-323, 373-374,
> 529-531, 660-661, 667. In addition, he has repeatedly complained
> of pain, numbness and tingling of his left upper extremity with
> radiation from his neck. See, e.g., 290, 292-293, 298-301, 514,
> 671, 688. He has also consistently reported exacerbation of his

pain with movement and use.  See, e.g., 298-301, 672-674, 765.  In addition, the ALJ limited him to a total of 4 hours of walking/standing during an 8-hour workday for 30 minutes at a time; a total of 7 hours of sitting during an 8-hour workday for 45-60 minutes at a time; no left arm overhead reaching, and only occasional other reaching with the left arm, among other things.  Tr. 18.  Furthermore, as discussed further above, Dr. Morton assessed [Plaintiff] with additional limitations on reaching, pushing, pulling, and operation of foot controls, among other further limitations which the ALJ failed to address or include in her RFC finding.  See Tr. 710-712.

These severe impairments and related symptoms and limitations certainly warrant a limitation to a maximum of sedentary work. . . . Rule 201.14 directs a finding of "disabled" with a sedentary RFC finding.

In accordance with the above, the ALJ's RFC finding lacks the support of substantial evidence and is, in fact, inconsistent with the evidence of record. . . .

Id., p. 19-20 (underlining original).

Defendant responds that, "considering the evidence of record and Plaintiff's credibility, the ALJ's RFC finding was proper."  Docket No. 21, p. 11-12.  Defendant notes that Plaintiff's argument on this issue is, "for the most part, conclusory."  Id.  Defendant argues, "to the extent that Plaintiff relies on the fact that the ALJ limited Plaintiff to only 4 hours per day of standing/walking (Tr. 18), that is not inconsistent with being able to perform a reduced range of light work," because Plaintiff "would be able to lift/carry 20 pounds occasionally and 10 pounds frequently [in fact, 30 pounds occasionally and 20 pounds frequently - Tr. 18], which is consistent with the ability to perform light work."  Id., p. 12 (bracketing original).  Id., p. 12. Defendant contends that the fact that Plaintiff's ability to stand/walk was somewhat reduced would not limit him to sedentary work, although Defendant concedes that such limitation "would preclude the full range of light work."  Id. (underlining original).

As discussed above, the ALJ ultimately determined that Plaintiff retained the following

RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasional lifting/carrying of up to 30 pounds and frequent lifting/carrying of up to 20 pounds; a total of 4 hours of walking/standing during an 8-hour workday for 30 minutes at a time, a total of 7 hours of sitting during an 8-hour workday for 45-60 minutes at a time; no overhead reaching using the nondominant left hand/arm; only occasional other reaching using the left hand/arm; occasional climbing of ladders and scaffolds; occasional stooping, crouching, and crawling; and only occasional exposure to extreme cold.

TR 18.

In making her determination, the ALJ discussed the evidence set forth in the statements of

error above, as well as Plaintiff's testimony and subjective complaints.  TR 18-21.  She

explicitly noted that Plaintiff's primary allegations of disability revolved around his back and

arm pain, but ultimately found that Plaintiff's statements concerning the intensity, persistence,

and limiting effects of his symptoms were not fully credible.  TR 19.  Specifically, the ALJ

stated:

> The claimant testified that he is unable to work due to pain in his back and left arm.  He stated that on a bad day, his pain is an 8 out of 10 and that he has 3-4 bad days per week.  He stated that in a typical day, he is able to fix breakfast and spends most of the day watching television.  He did state that he is capable of cooking, grocery shopping, and doing most household chores.  In a function report, the claimant also stated that he can complete light housework, laundry, and light yard work.  Ex. 6E.  Further, he stated that he could drive, go to his friend's house for eat [*sic*], and shop two times per week.  Ex. 6E.  The undersigned finds that the claimant's testimony is partially credible.  While the claimant's impairments could reasonably result in some limitations of

> functioning due to pain, the claimant's statement that he is unable to work due to his neck and arm pain appears exaggerated in light of the medical evidence, especially Dr. Morton's consultative examination findings. Ex. 6F. Consequently, the claimant's testimony is credited only to the extent it is consistent with the above-stated residual functional capacity.

TR 20.

Although Plaintiff contends that the ALJ should have limited him to sedentary work and found him disabled because the "record supports additional limitations" and because the RFC is "contrary to the medical evidence and fails to account for all of the limitations resulting from his severe impairments," Plaintiff bases these arguments primarily on his subjective complaints. *See* Docket No. 16-1, p. 19-20. As has been discussed above, the ALJ properly evaluated the evidence of record and Plaintiff's subjective complaints, and reached a reasoned decision that was supported by the evidence. As also discussed above, additional limitations were not warranted.

The ALJ in the instant action properly evaluated the evidence in reaching her RFC determination, and the Regulations do not require more. Moreover, the ALJ's RFC determination is supported by substantial evidence; therefore the ALJ's determination must stand.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge